**COM**
ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
MATTHEW D. MINUCCI, ESQ.
Nevada Bar No. 12449
HAYDEN R. COTTLE, ESQ.
Nevada Bar No. 16219
**THE COTTLE FIRM**
8635 S. Eastern Avenue
Las Vegas, Nevada 89123
Email: mminucci@cottlefirm.com
Phone: (702) 722-6111
Facsimile: (702) 834-8555
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRITTANY POWERS, individually and as Assignee of Rights Held by AMERICAN PROTECTION GROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> HISCOX, INC. d/b/a HISCOX INSURANCE AGENCY; UNDERWRITERS AT LLOYDS LONDON; DOES I through X; and ROE CORPORATIONS/ENTITIES I through X, inclusive, <br><br> Defendants. | CASE NO.: 2:23-CV-01472-GMN-EJY |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff BRITTANY POWERS, individually and as Assignee of Rights Held by AMERICAN PROTECTION GROUP INC., by and through her attorneys of record, ROBERT W. COTTLE, ESQ., and MATTHEW D. MINUCCI, ESQ., of THE COTTLE FIRM, complain against Defendants as follows:

**GENERAL ALLEGATIONS**

1. At all times relevant, Plaintiff BRITTANY POWERS was and is a resident of the Clark County, State of Nevada.

2. At all times relevant, Plaintiff BRITTANY POWERS is the Assignee of Rights Held by AMERICAN PROTECTION GROUP, INC., a Nevada Corporation (hereinafter referred to as "APG").

3. Upon information and belief, Defendant UNDERWRITERS AT LLOYD'S LONDON ("Lloyd's London" "Lloyd's" or collectively with the other Defendants, "Defendants") was at all times mentioned herein, an unincorporated association and/or limited partnership organized under the law of Great Britain for providing infrastructure for the international insurance market. Upon information and belief, Lloyd's London transact business in Clark County, State of Nevada.

4. Upon information and belief, Lloyd's London itself does not insure any risk, but rather, it is comprised of individual underwriters known as "members" or "syndicates" that assume all or a portion of the risk underwritten.

5. Upon information and belief, the members of Lloyd's London are either individuals or corporations, with different or multiple residences or principal places of business.

6. Defendant HISCOX, INC. dba HISCOX INSURANCE AGENCY ("Hiscox" or collectively with Lloyd's, "Defendants") was at all relevant times mentioned herein, a foreign corporation, transacting business in Clark County, State of Nevada.

7. Defendants have an obligation to understand and be familiar with Nevada law as it pertains to liability insurance coverage for Defendants' insureds.

8. Defendants deliberately denied coverage improperly in violation of Nevada law.

9. The decision of Defendants to deny coverage, and failed to defend APG in the underlying litigation (Powers vs. American Protection Group Inc., et al. / Case No.: A-20-814555-C) despite the clear requirement to do so under NRS 485.3091(2), was a breach of its duty to defend.

10. Upon information and belief, one of Defendants' goals was to decrease payments of claims for Defendants' own financial benefit, with a specific knowledge and intent that Defendants' activity

would benefit Defendants, while harming APG.

11. The decision to pretend the policy excluded coverage by Lloyd's and Hiscox was an act that conflicts with clear Nevada law.

12. That "an insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." See Century Surety v. Andrew, 134 Nev.Adv.Op 100, 432 P.3d 180 (2018) (citing United Nat'l Ins. Co. v. Frontier Ins. Co. Inc. 120 Nev. 678, 684 (2004)).

13. That "the duty to defend arises when there is a potential for coverage based on the allegations in a complaint." See United Nat'l Ins. Co. v. Frontier Ins. Co. Inc. 120 Nev. 678, 684 (2004).

14. That the Nevada Supreme Court has held that "where there is potential for coverage based on 'comparing the allegations of the complaint with the terms of the policy,' an insurer does have a duty to defend." See Century Surety v Andrew, 134 Nev.Adv.Op. 100, 432 P.3d 180 (2018).

15. Defendants failed to offer, suggest, and/or provide independent Cumis counsel to advise APG as to the decision to deny coverage or failure to defend them in the Underlying Lawsuit, and/or indemnify, or pertinent pleadings, and Order before and by the Court, and of any related matters.

16. That under Century Surety v. Andrew, 134 Nev.Adv.Opp. 100, 432 P.3d 180 (2018), an insurer is liable for all consequential damages arising out of any breach of the duty to defend an insured. Additionally, "an insurer's liability for the breach of the duty to defend is not capped at the policy limits, even in the absence of bad faith." The Nevada Supreme Court subsequently reiterated that the reasonableness of an insurer's refusal to defend "is irrelevant for determining damages upon a breach of the duty to defend." Nalder v. United Auto Ins. Co., No. 70504, 2019 WL. 5260073.

17. The true names and capacities of Defendant DOE INDIVIDUALS I through X are unknown to Plaintiff, and Plaintiff therefore sues said Defendants by said fictitious names. Plaintiff is informed and believes, and thereupon alleges that each of the Defendants designated as DOE INDIVIDUALS

are responsible in some manner for the events and happenings referred to and cause the damages to Plaintiff as alleged and Plaintiff will ask leave of Court to amend this Complaint to insert the true names and capacities of DOE INDIVIDUALS I through X when they as ascertained by Plaintiff together with appropriate charges and allegations to join such Defendants in this action.

18. The true names and capacities of Defendants ROE CORPORATIONS I through X are unknown to Plaintiff, and Plaintiff therefore sues said Defendants by said fictitious names. Plaintiff is informed and believes, and thereupon alleges that each of the Defendants designated as ROE CORPORATIONS I through X are responsible in some manner for the events and happenings referred to and caused the damages to Plaintiff as alleged, and Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of ROE CORPORATIONS I through X when they are ascertained by Plaintiff together with appropriate charges and allegations to join such Defendants in this action.

## **FACTUAL ALLEGATIONS**

19. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 of this Complaint as though set forth fully herein at length.

20. APG purchased a policy of insurance from Lloyd's and/or Defendants, Policy No. MPL4147217.19 (the "Policy").

21. The Policy was effective at all times relevant to this litigation. The Policy was administered by Hiscox and/or Defendants.

22. On December 8, 2020, Brittany Powers filed an Amended Complaint in the Eighth Judicial District Court in Clark County, State of Nevada, entitled Brittany Powers v. Harbor Island Apartments, et al. Case No. A-20-814555-C (the "Underlying Lawsuit"). In that Amended Complaint, Ms. Powers alleges a breach of APG's duty to provide security. Alleging that APG was negligent, failed to control, supervise, monitor, secure, guard and protect the property where the incident occurred.

23. Shortly after the Underlying Lawsuit was filed, an attorney for Harbor Islands Apartments ("Harbor"), another Defendant in the Underlying Lawsuit, contacted APG and demanded that APG defend and indemnify Harbor in the Underlying Lawsuit.

24. Following receipt of notice of the Underlying Lawsuit, on or about December 16, 2020, APG, through its representative, sought coverage under the Policy and tender its defense and indemnity to Defendants.

25. Defendants refused to accept APG's tender of defense and indemnity, and on or about January 26, 2021, Defendants denied coverage for the incident alleged in the Underlying Lawsuit. APG had denied liability in the Underlying Lawsuit and proceeded to defend against the claims in the Underlying Lawsuit, until APG was unable to financially continue to do so.

26. The basis for Defendants' denial is the following: "The basis of this matter is that Plaintiff was sexually assaulted. Thus, we are constrained to conclude that there is no coverage available under the Professional Liability coverage for this matter pursuant to this exclusion." Ms. Powers complaint alleged negligent security.

27. Soon thereafter, APG sent correspondence to the State of California Department of Insurance, seeking assistance with obtaining coverage for the Underlying Lawsuit.

28. On or about April 1, 2021, Hiscox sent APG its response to APG's inquiry with the California Department of Insurance. In that letter, Defendants, through Hiscox, again reiterated their position that no coverage applied to the Underlying Lawsuit on the sole basis set forth above.

29. On or about March 27, 2023, and due to Defendants' failure to afford coverage, tender a defense in the Underlying Lawsuit, and/or indemnify, a judgment was entered against APG and in favor of Brittany Powers, in the amount of $20,654,713.00, and which is accruing, and will continue to accrue, interest.

30. On or about May 30, 2023, and due to Defendants' failure to afford coverage, tender a defense in the Underlying Lawsuit, and/or indemnify, a judgment was entered against APG and in favor of Harbor Island Apartments, Nevada Development Associates VI, L.P., Mountain View Equity L.P., Exeter 19384 NV LLC, and Advanced Management Group Nevada, LLC, in the amount of $1,460,500.00, and which is accruing, and will continue to accrue, interest.

31. To date, Defendants have refused to defend and/or indemnify APG for the Underlying Lawsuit, while costs of defense of the Underlying Lawsuit continue to mount.

32. To date, Defendants have refused to satisfy the judgment entered against APG in the Underlying Lawsuit, while costs of defense of the Underlying Lawsuit continue to mount.

33. On September 12, 2023, an Order was issued for the Underlying Lawsuit, granting Brittany Powers' the assignment of claims and causes of action APG has against Defendants.

34. On September 18, 2023, a Stipulation and Order was entered substituting Brittany Powers individually and as assignee of rights held by APG, for this instant matter.

35. The Policy provides coverage for the claim, including defense and/or indemnify, or at a minimum, when read as a whole, is subject to more than one reasonable interpretation due to the Policy's inherent ambiguity. Additionally, one or more of the Policy's many exclusions violate public policy, and such exclusions are void as against public policy.

36. APG and its Insured Persons have been left alone by their insurer to bear their own defense costs because Defendants have unreasonably and improperly denied APG's claim.

37. Plaintiff has suffered significant damages due to Defendants' decision to unreasonably and improperly denied Plaintiff's claim.

. . .

. . .

. . .

# FIRST CAUSE OF ACTION
(Breach of Contract)

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint as though set forth fully herein at length.

39. The Policy is a valid and enforceable contract and was in full force and effect when APG tendered defense and indemnity for the Underlying Lawsuit to Defendants.

40. For adequate consideration, including payment of premiums, Defendants agreed to abide by the terms of the Policy, including to provide insurance coverage purchased by APG.

41. APG fully performed its obligations under the Policy.

42. Defendants breached the Policy by wrongfully denying coverage for the Underlying Lawsuit, and by wrongfully failing to defend and indemnify APG for the Underlying Lawsuit.

43. Defendants breached the Policy by refusing to act in good faith and intentionally left APG to defend itself and unilaterally respond to the Underlying Lawsuit.

44. Plaintiff has suffered direct and consequential damages due to Defendants' decision to not afford coverage under The Policy, not defend APG in the Underlying Lawsuit, and/or to not indemnify.

45. The relationship of an insured to an insurer is one of special confidence and akin to that of a fiduciary.

46. A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another.

47. This special relationship exists in part because, as insurance companies are aware, consumers contract for insurance to gain protection, peace of mind, and security against calamity.

48. The language of the contract should be viewed from the perspective of one not trained in the law.

49. Any ambiguity in the terms of an insurance contract must be resolved in favor of the insured and against the insurer.

50. Here, Defendants breached their contract with APG by interpreting their contract in a way to favor their interests, to APG's detriment.

51. In fact, the terms of the contract did not support Defendants' false interpretations, due to the plain terms and due to ambiguities, that should have been resolved in favor of APG's interests.

52. APG was sued under a theory of negligence and negligent security.

53. An insurer has a duty to evaluate and pay a claim fairly and in good faith. See Ainsworth v. Combined Ins. Co. of Am. 105 Nev. 237, 251, 774 P.2d 1003, 1014 (1989).

54. At all times pertinent hereto, Defendants had a contractual duty to evaluate and pay claims fairly that had been made against APG.

55. However, Defendants failed to evaluate or pay claims fairly, thereby breaching their contract with APG.

56. As a result, APG was sued and suffered considerable harm.

57. As a direct and proximate result of Defendants breach of contract, APG has sustained general damages, including but not limited, the payment of legal fees and other costs to date, as well as the entry of judgments against APG in the Underlying Lawsuit, in excess of $15,000.00.

58. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION
**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)**

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint as though set forth fully herein at length.

60. As stated above, the Policy is a valid and enforceable contract.

61. There is implied, in every contract in Nevada, a duty of good faith and fair dealing.

62. Defendants owe APG a duty of good faith and fair dealing.

63. Defendants breached that duty by performing in a manner that was unfaithful to the purpose of the Policy.

64. Defendants breached their duty of good faith and fair dealing by failing to give at least as much consideration to the interests of APG as it gave its own interests.

65. Defendants breached their duty of good faith and fair dealing by having an actual or implied awareness of the absence of a reasonable basis to deny APG the benefits of the Policy.

66. Defendants breached their duty of good faith and fair dealing by relying on its own interpretation of ambiguous terms in the Policy to deny coverage to APG.

67. Defendants breached their duty of good faith and fair dealing by refusing to act in good faith and intentionally left APG to defend itself and unilaterally advance funds to respond to and defend the Underlying Lawsuit.

68. As a result of Defendants performing in a manner that was unfaithful to the purpose of Policy, APG's justified expectations were denied.

69. As a result of Defendants performing in a manner that was unfaithful to the purpose of Policy, judgments were entered against APG in the Underlying Lawsuit.

70. The actions of Defendants as described herein, constitute a contractual breach to the covenant of good faith and fair dealing with APG, and as a direct and proximate result thereof, APG has been damaged, including but not limited to the payment of legal fees and other costs to date, as well as the entry of judgments against APG in the Underlying Lawsuit, in the sum in excess of $15,000.00.

71. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorney's fees and costs of suit incurred herein.

. . .

. . .

. . .

## THIRD CAUSE OF ACTION
### (Common Law Insurance Bad Faith)

72. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 71 of this Complaint as though set forth fully herein at length.

73. The Policy is a valid and enforceable contract.

74. There is implied, in every contract in Nevada, a duty of good faith and fair dealing.

75. Defendants owe APG a duty of good faith and fair dealing.

76. A special element of reliance or fiduciary duty exists between Plaintiff and Defendants because Defendants were in a superior and entrusted position, namely that of insurer and insured.

77. APG had a justifiable expectation to receive the benefit of insurance coverage consistent with the spirit of the Policy.

78. Defendants tortiously breached their duty of good faith and fair dealing by failing to give at least as much consideration to the interests of APG as it gave its own interests.

79. Defendants breached their duty of good faith and fair dealing by having an actual or implied awareness of the absence of a reasonable basis to deny APG the benefit of the Policy.

80. Defendants breached their duty of good faith and fair dealing by relying on their own interpretation of ambiguous terms in the Policy to deny coverage to APG.

81. Defendants breached their duty of good faith and fair dealing by refusing to act in good faith and intentionally left APG to defend itself and unilaterally advance funds to respond to and defend the Underlying Lawsuit.

82. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to payment of legal fees and other costs, as well as the entry of judgments against APG in the Underlying Lawsuit.

83. At all times mentioned herein, Defendants further owed a duty to APG to ensure Defendants did not impair APG's rights to receive benefits of the Policy.

84. It is Defendants' duty to evaluate and pay the claim fairly, in good faith, and in a manner free from malice or oppression.

85. Plaintiff reasonably expected that Defendants would promptly pay covered losses.

86. Defendants unreasonably delayed and withheld legally entitled benefits under the Policy.

87. Defendants had no reasonable basis for withholding legally entitled benefits under the Policy and Defendants knew or recklessly disregarded the fact that there was no reasonable basis for withholding those legally entitled benefits.

88. Defendants acted in bad faith and violated its implied covenant of good faith and fair dealing by failing and refusing to provide the legally entitled benefits due and owing to APG under the Policy.

89. At all times relevant, Defendants had actual or implied awareness of the absence of a reasonable basis for withholding legally entitled benefits under the Policy.

90. Defendants' conduct was deliberate, calculated, and done with the knowledge that there was a probable harmful consequence to APG.

91. Defendants have refused to defend and indemnify APG under the Policy for losses associated with this claim and/or the Underlying Lawsuit.

92. At all times relevant, Defendants had reason to know that it was probable that APG would suffer unjust hardship if Defendants deprived APG of the benefits under the Policy.

93. At all times relevant herein, Defendants was aware of its obligation to discharge its contractual responsibilities to APG, but consciously and deliberately acted for Defendants' own benefit and to the detriment of APG.

94. Defendants knew or should have known to a measure of certainty that APG was legally entitled to benefits under the Policy.

95. Defendants knew or should have known that it is required to promptly pay benefits that APG is legally entitled to.

96. Defendants' failure to exercise good faith and fair dealing, and conversely to act oppressively and in bad faith, has resulted in substantial delay in receipt of benefits to which APG is entitled, and has and will result in substantial economic loss, including but not limited to as well as attorneys' fees, costs, and the entry of judgments against APG in the Underlying Lawsuit.

97. The aforesaid conduct of Defendants was conscious and deliberate, and in willful, wanton, and reckless, in disregard to APG's interests and in conscious disregard to the consequences to APG, to such extent as to constitute oppression, fraud and actual malice toward APG, thus entitling Plaintiff to an award for punitive damages.

98. By reason of the premises and as a direct and proximate result thereof, Plaintiff has incurred expenses incidental thereto, all to their damage; Plaintiff is informed and believes, and thereon, alleges, that such expenses will continue in the future.

99. The actions of Defendants as described herein, constitute a tortious breach of the covenant of good faith and fair dealing with APG, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to payment of legal fees and other costs to date, as well as the entry of judgments against APG in the Underlying Lawsuit, in a sum in excess of $15,000.00.

100. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and are entitled to reasonable attorneys' fees and costs of suit incurred herein.

**FOURTH CAUSE OF ACTION**
**(Violation of the Unfair Claims Practices Act)**

101. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 100 of this Complaint as though set forth fully herein at length.

102. That APG and Defendants were bound by a contractual relationship pursuant to the Policy.

103. Defendants breached the covenant of good faith and fair dealing by its violation of provisions of the Unfair Claims Practices Act (NRS 686A.310) set out below; violations which were done with Defendants' actual and/or implied knowledge.

104. Engaging in any of the following activities is considered to be an unfair insurance practice:

   a. Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

   c. Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

   d. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

   e. Failing to effectuate prompt, fair, and equitable settlements of claims in which liability of the insurer has become reasonably clear.

   f. Compelling insureds to initiate litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

   g. Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

   h. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, or the representative, agent or broker of the insured.

  i. Failing, upon payment of a claim, to inform insured or beneficiaries of the coverage under which payment is made.

  j. Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

  k. Advising an insured or claimant not to seek legal counsel.

  l. Misleading an insured or claimant concerning any applicable statute of limitations.

105. Defendants violated numerous sections of the Nevada Unfair Insurance Practices Act, including unfair and deceptive acts and practices.

106. Defendants' violations of the Nevada Unfair Insurance Practices Act have caused APG serious harm.

107. Defendants' deliberate delay in paying benefits due to APG is in direct violation of both the Nevada Insurance Regulations and NRS 686A.310.

108. Defendants failed to acknowledge and act reasonably prompt upon communications with respect to claims arising under insurance policies, as prohibits by NRS 686A.310(1)(b).

109. Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the insurance policy, as prohibited by NRS 686A.310(1)(c).

110. Defendants failed to effectuate prompt, fair and equitable settlement of claims in which its liability had become reasonably clear, as prohibited by NRS 686A.310(1)(e).

111. Defendants failed to promptly provide to an insured a reasonable explanation of the basis in the Policy, with respect to the facts of the insureds' claim and the applicable law, for the denial of the claim for an offer to settle or compromise the claim, in violation of NRS 686A.310(1)(n).

112. Defendants have refused to act in good faith by intentionally leaving APG to defend itself and unilaterally respond to the Underlying Lawsuit.

113. Defendants have refused to act in good faith which has resulted in judgments being entered against APG in the Underlying Lawsuit.

114. Defendants' actions were specifically in violation of the provision of Nevada's Unfair Trade Practices Regulation (Nevada Administrative Code 686A.660 through 686A.670), violation of which was done with Defendants actual, constructive and/or implied knowledge.

115. Nevada Trade Practice regulation requires the following:

1. Each insurer shall fully disclose to first-party claimants all pertinent benefits coverages or other provisions of an insurance contract or policy under which a claim is presented.

2. No agent may conceal from a first-party claimant any of the benefits, coverages or other provisions of any insurance contract or policy when pertinent to a claim.

3. No insurer may deny a claim for failure to exhibit the property without proof of demand and unfounded refusal by a claimant.

4. No insurer may, except where there is a time limit specified in the insurance contract or policy, require a claimant to give written notice of loss or proof of loss within a specified time or seek to relieve the insurer of the obligations if the requirement is not complied with, unless the failure to comply prejudices the insurer's rights.

5. No insurer may request a first-party claimant to sign a release which extends beyond the condition or occurrence which gave rise to the claim payment.

6. No insurer may issue a check or draft in partial settlement of a loss or claim under a specified coverage if the check contains language which releases the insurer or its insured from its total liability.

7. Every insurer shall acknowledge the receipt of a claim notice within 20 working days after receipt of the claim notice unless payment of the claim is made within that time. If acknowledgment is made by means other than writing, an appropriate dated notation of the

acknowledgment must be made in the claim file of the insurer. Notice given to an agent of an insurer is notice to the insurer.

8. An appropriate reply must be made within 20 working days after receipt of any other pertinent communication from a claimant if the communication reasonably suggests that a response is expected.

9. Each insurer, upon receiving notification of claim, shall promptly provide necessary claim forms, instructions and reasonable assistance so that first-party claimants can comply with the policy conditions and the insurer's reasonable requirements. Compliance with this subsection within 20 working days after receipt of notification of a claim constitutes compliance with subsection 7.

10. Each insurer shall establish procedures to begin an investigation of any claim within 20 working days of receipt of notice of the claim. Each insurer shall mail or otherwise provide to each claimant, a notice of all items, statements and forms, if any, which the insurer reasonably believes will be required of the claimant, within 20 working days after receiving notice of the claim.

11. Each insurer shall complete an investigation of each claim within 30 days after receiving notice of the claim, unless the investigation cannot reasonably be completed within that time.

12. Within 30 working days after receipt by the insurer of properly executed proofs of loss, the claimant must be advised of the acceptance or denial of the claim by the insurer. No insurer may deny a claim on the grounds of a specific condition or exclusion unless reference to that provision, condition or exclusion is included in the denial. The denial must be given to the claimant in writing and filed and retained in the insurer's claim file. If the claim of the claimant is accepted, the insurer shall pay the claim within 30 days after it is accepted.

13. If a claim is denied for reasons other than those describe in subsection 13, and is made by any means other than writing, an appropriate notation must be made in the claim file of the insurer and if the insurer needs more time to determine whether a claim of a first-party claimant should be a accepted or denied, it must so notify the claimant within 30 working days after receipt of the proof of loss giving reasons that more time is needed. If the investigation remains incomplete, the insurer shall, 30 days after the date of the initial notification and every 30 days thereafter, send to the claimant a letter setting forth the reasons that additional time is needed for investigation.

14. Insurers may not fail to settle first-party claims on the basis that responsibility for payment should be assumed by others except as provided by policy provisions.

15. Insurers may not delay settlement of a claim directly with a claimant who is not an attorney or represented by an attorney by extending negotiations until the claimant's rights may be affected by a statute of limitations or a time limit which is part of an insurance contract or policy, without giving the claimant written notice that the time limit may be expiring and may affect the claimant's rights. Notice must be given 60 days before the date on which a time limit may expire.

16. No insurer may make statements which indicate that the rights of a third-party claimant may be impaired if a form or release is not completed within a given time, unless the statement is given for the purpose of notifying the third-party claimant of the provision of a statute of limitations.

17. Except for a claim involving health insurance, any case involving a claim in which there is a dispute over any portion of the insurance policy coverage payment for the portion or portions not in dispute must be made notwithstanding the existence of the dispute where payment can be made without prejudice to any interested party.

118. Due to Defendants' conduct in violation of NUTPA, Defendants are liable to Plaintiff for damages it sustained as a result of the commission of the unfair practices, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to payment of legal fees and other costs, as well as the entry of judgments against APG in the Underlying Lawsuit, in a sum in excess of $15,000.00.

119. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs of suit incurred herein.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, expressly reserving the right to amend this Complaint prior to or at the time of trial of this action to insert those items of damage not yet fully ascertainable, prays for judgment against Defendants, as follows:

1. General damages sustained by Plaintiff in an amount in excess of $15,000.00;

2. Special damages to be determined at the time of trial;

3. Consequential damages, including attorneys' fees;

4. Expectation damages for denied policy benefits in excess of $15,000.00;

5. Incidental expenses already incurred and to be incurred;

6. Reasonable attorneys' fees and costs of suit;

7. Punitive damages in an amount to be determine at trial;

8. Interest at the statutory rate;

9. A declaratory judgment as set forth above; and

10. For such other relief as the Court deems just and proper.

DATED this 29th day of September, 2023

**THE COTTLE FIRM**

*/s/ Robert W. Cottle*
ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
MATTHEW D. MINUCCI, ESQ.
Nevada Bar No. 12449
HAYDEN R. COTTLE, ESQ.
Nevada Bar No. 16219
8635 S. Eastern Avenue
Las Vegas, Nevada 89123
*Attorneys for Plaintiff*