UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRITTANY POWERS, *et. al.*,<br><br>        Plaintiffs,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON AS SUBSCRIBED TO POLICY NUMBER MPL4147217.19, *et. al.*,<br><br>        Defendants. | Case No.: 2:23-cv-01472-GMN-EJY<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 19), filed by Plaintiff Brittany Powers, individually and as the assignee of rights held by American Protection Group, Inc. ("APG"). Defendants Certain Underwriters at Lloyd's London as subscribed to Policy Number MPL4147217.19, and Hiscox, Inc. filed a Response, (ECF No. 24), which also functions as their Cross-Motion for Summary Judgment. Plaintiff filed a Reply to her Motion for Summary Judgment, which is also her Response to Defendants' Motion for Summary Judgment, (ECF No. 26). Lastly, Defendants filed a Reply to their Motion for Summary Judgment, (ECF No. 27).

Because the Court finds that the Policy's Sexual Misconduct Exclusion is ambiguous and a potential for coverage existed under the Policy, the Court **GRANTS in part** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment.

**I.        BACKGROUND**

This case arises from an indemnity claim based on Plaintiff's state court lawsuit against her apartment complex and its security company, APG, after she was sexually assaulted while walking to her apartment. (*See generally* First Am. Compl. ("FAC"), ECF No. 8). In her state court suit, (the "Underlying Lawsuit"), Plaintiff brought claims for negligence, negligence per

se, and negligent hiring, training, retention, supervision, and management. (*See generally* State Court Compl., Ex. 3 to Pl.'s Mot. Summ. J., ECF No. 19-3). APG sought defense and indemnity coverage from the Defendants in this case, Lloyd's and Hiscox, pursuant to its Hiscox Pro Liability Insurance Policy number MPL4147217.19 (the "Policy"). (*See* Initial Denial Letter, Ex. 4 to Pl.'s Mot. Summ. J., ECF No. 19-4).

Defendants declined to defend APG in the Underlying Lawsuit, asserting that there was "no coverage available under the Professional Liability" section of the Policy because the state court lawsuit was based on a sexual assault, and thus the Policy's Sexual Misconduct Exclusion applied.[1] (*Id.*). The letter explained that the Sexual Misconduct Exclusion precluded claims "based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities." (*Id.* at 2). The letter further encouraged APG to contact the California Department of Insurance if it believed the claim was wrongfully denied. (*Id.* at 3). When APG challenged the coverage denial with the California Department of Insurance, Defendants again declined to defend APG. (Second Denial Letter, Ex. 5 to Pl.'s Mot. Summ. J., ECF No. 19-5).

APG eventually ran out of funds to pay its counsel, so the trial court entered default judgment against it and awarded Plaintiff over $20 million in damages.[2] (APG Mot. Withdraw as Att'y, Ex. 7 to Pl.'s Mot. Summ. J., ECF No. 19-7); (APG J., Ex. 8 to Pl.'s Mot. Summ. J., ECF No. 19-8). The court also entered default judgment in favor of the other defendants and

---

[1] Plaintiff is correct that the title of the exclusion, "Sexual Misconduct," does not operate to limit coverage and is rather used solely for reference. (*See* Resp. to Defs.' Mot. Summ. J. 3:19–21, 11:12, ECF No. 26). The Court will use this title to refer to the exclusion in this Order.

[2] APG also brought a separate lawsuit against Defendants but voluntarily dismissed its suit without prejudice after its counsel withdrew. (APG Compl., Ex. 8 to Defs.' Mot. Summ. J., ECF No. 24-8); (Dismissal Stip., Ex. 10 to Defs.' Mot. Summ. J., ECF No. 24-10).

awarded almost $1.5 million in damages. (Harbor Island J., Ex. 9 to Pl.'s Mot. Summ. J., ECF No. 19-9).  After judgment was entered against APG, the trial court assigned APG's rights to Plaintiff, and she filed the instant suit against Defendant insurers Lloyd's and Hiscox. (*See* Assignment Order, Ex. 11 to Defs.' Mot. Summ. J., ECF No. 24-11).  Plaintiff brings claims for breach of contract, contractual breach of the implied covenant of good faith and fair dealing, common law insurance bad faith, and violations of the Unfair Claims Practices Act, NRS 686A.310. (FAC ¶¶ 38–119).

Plaintiff moves for summary judgment on her breach of contract claim only, asking the Court to determine whether Defendants properly applied the Sexual Misconduct Exclusion when it denied APG coverage under the Policy. (Pl.'s Mot. Summ. J. 3:1–2, ECF No. 19). Defendants cross-move for summary judgment on all claims. (*See generally* Defs.' Mot. Summ. J., ECF No. 24).

## II.         LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.     DISCUSSION

The parties' Cross Motions for Summary Judgment ask the Court to decide the correct interpretation of the Policy's Sexual Misconduct Exclusion. The entirety of Defendants' Motion is based on their argument that the Policy's Sexual Misconduct Exclusion bars coverage for the Underlying Lawsuit and the default judgment against APG. (Defs.' Mot. Summ. J. 3:17–19). Plaintiff argues that the Exclusion contains ambiguous language that should be construed in favor of the insured, APG. (*See generally* Pl.'s Mot. Summ. J.).[3]

---

[3] Plaintiff also argues that Defendants' interpretation of the Sexual Misconduct Exclusion violates the liability insurance requirement under NRS 648.135. But because the Court construes the Exclusion in favor of Plaintiff and against Defendants, it does not adopt Defendants' interpretation and thus need not decide this issue.

### A. Choice of Law

Before addressing the parties' substantive arguments, the Court must first determine which state's law governs. Nevada follows the Second Restatement of Conflict of Laws when "determining choice of law questions involving contracts, generally, and insurance contracts, in particular." *Golden Bear Ins. Co. v. Evanston Ins. Co.*, 564 F. Supp. 3d 922, 927 (D. Nev. 2021). For liability insurance contracts, the Second Restatement indicates that "the validity of [such a] contract and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . . ." Restatement (Second) of Contracts § 193 (1988); *see also Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063–64 (Nev. 2014) (following the approach set out in section 193). Here, the insured risk was an apartment complex located in Las Vegas, Nevada. Thus, the Court finds that Nevada law is the relevant law for interpreting the contract. In situations where Nevada law may be lacking, courts look to California for guidance. *Am. Nat'l Prop. and Cas. Co. v. Gardineer*, 25 F.4th 1111, 1117 (9th Cir. 2022).

### B. Breach of Duty of Defend

Plaintiff alleges that Defendants breached the Policy by wrongfully denying coverage for the Underlying Lawsuit and wrongfully failing to defend APG. (FAC ¶¶ 38–58). "The duty to defend is broader than the duty to indemnify." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620–21 (Nev. 2011). "As a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620–21 (Nev. 2011) (internal citations and quotation marks omitted). When facts are not in dispute, contract interpretation is a question of law for the court. *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 197 P.3d 1032, 1041 (Nev. 2008). Facts are not in dispute in this case; rather, the parties disagree on the interpretation of the Policy's Sexual Misconduct Exclusion, which is a question of law properly

determined on summary judgment. *See Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003).

"An insurance policy is a contract that must be enforced to its terms to accomplish the intent of the parties." *Id.* Courts interpret any ambiguity in an insurance policy against the insurer and in favor of the insured. *Neumann v. Standard Fire Ins.*, 699 P.2d 101, 104 (Nev. 1985). An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation." *Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1057 (Nev. 2000). "While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. v. Reno's Exec. Air*, 682 P.2d 1380, 1383 (Nev. 1984). "An insurance policy is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Id.* at 1382. The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted. *Bidart v. American Title*, 734 P.2d 732, 734 (Nev. 1987).

Here, the Court finds the Sexual Misconduct Exclusion ambiguous in two ways: whether sexual assault by a third party is excluded, and whether the exclusion applies to sexual assault at all. The Professional Liability section of the Policy disclaims any obligation to pay any sum, including any damages or claim expenses, for any claim "based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, *including* the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities." (Policy at 14, 16, Ex. 1 to Defs.' Mot. Summ. J., ECF No. 24-1) (emphasis added).

Plaintiff interprets the "including" clause as precluding coverage for only the "'rogue' security officer" that sexually harasses or abuses those they are employed to protect. This is a reasonable reading of the clause. The Ninth Circuit has noted that "including" is "ordinarily defined as a term of illustration, signifying that what follows is an example of the preceding principle." *Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006). The first illustration provided by the Sexual Misconduct Policy is the conduct by an employee of the insured. This illustration is reasonably interpreted as an example of what type of claim will be excluded: only those arising out of sexual misconduct by an insured's employee.

Plaintiff's expert provides further support for the idea that Sexual Misconduct exclusions apply only to the conduct of the insured. Professor Stempel testified that sex-based exclusions became commonly used in the 1980s and 1990s in response to liability claims arising out of abuse by daycare or educational staff, or misconduct of security personnel, hotel staff, and others in a position to prey upon those they should be caring for. (Stempel Report ¶ 16, Ex. 4 to Resp. to Defs.' Mot. Summ. J., ECF No. 26-4). Because insurers seek to provide coverage for losses arising out of accidents, they avoid coverage for the insured's intentional infliction of injury. (*Id.* ¶ 18). He also opines that sexual misconduct exclusions were not intended to negate coverage merely because a third-party's intentional acts include sexual misconduct when other intentional acts like assault and battery *would* be covered. (*Id.* ¶¶ 23–24).

Defendants' interpretation that the Exclusion also precludes claims arising out of third-party conduct is likewise reasonable because the Sexual Misconduct Exclusion does not expressly limit the exclusion to the insureds' misconduct, but rather *includes* the insureds' misconduct. The exclusion is written broadly, perhaps intentionally, to leave open the possibility that a third party's sexual misconduct would be excluded. Defendants rely on district court opinions in California and Nevada for the proposition that absence of a reference

to a specific tortfeasor, whether insured or uninsured, makes a sexual misconduct exclusion broad and unambiguous and reflects that the exclusion applies to anyone. (*See* Defs.' Mot. Summ. J. 11:4–14:10).  But these cases involve distinguishable policy types, language, and circumstances.  The majority of Defendants' cited cases involve instances in which the perpetrator of the sexual assault was an insured and the policy was for homeowners or general liability insurance. *See, e.g.*, *Universal N. Am. Ins. Co. v. Colosi*, No. 2:17-cv-00113-JAD-GWF, 2018 WL 3520118, at *2 (D. Nev. July 20, 2018) (finding that a homeowner policy excluded sexual battery by the son of the insured policyholder); *Liberty Mut. Fire Ins. Co. v. Shaibaz S.*, No. 15-CV-03943-JD, 2017 WL 2118312, at *3 (N.D. Cal. May 16, 2017) (excluding sexual molestation by son of a homeowner policyholder); *Flores v. AMCO Ins. Co.*, No. CVF07-1183LJODLB, 2007 WL 3408255, at *8 (E.D. Cal. Nov. 15, 2007), aff'd, 323 F. App'x 587 (9th Cir. 2009) (excluding insured homeowner's rape of 15-year-old girl at his home).  Defendants do not present any cases involving a policy similar to the one in this case, which is a specialty lines policy for a security company that covered the negligent performance of services and includes occurrences arising out of "bodily injury." (Policy at APG0010, Ex. 1 to Pl.'s Mot. Summ. J.).

Thus, while the Exclusion could be read broadly to pertain to the actions of third parties, under controlling Nevada law, the Court must read it narrowly against the insurer. *See Nat'l Union Fire Ins.*, 682 P.2d at 1383.  It is certainly reasonable, if not intuitive, to read the Exclusion as applying to actions of the insured's employees only, particularly when the history of the Sexual Misconduct Exclusion is considered.  Therefore, even assuming Defendants' broad interpretation is reasonable, it cannot prevail because Defendants did not establish that their interpretation was the only reasonable one. *See MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1218 (Cal. 2003).  Further, because the coverage portion of this policy would lead a reasonable security company to expect coverage for instances of third-party sexual assault in

the same way it provides coverage for other intentional torts such as assault and battery leading to bodily injury, the exclusion must be particularly "conspicuous, plain, and clear." *See State Farm Mut. Auto. Ins. Co. v. Jacober*, 514 P.2d 953, 958 (Cal. 1973). It is not.

While that ambiguity alone is enough to find that Defendants breached their duty to defend APG, the Court further notes that a second ambiguity exists in the exclusion's described conduct: "abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature . . . ." (Policy at 14, 16, Ex. 1 to Defs.' Mot. Summ. J.). Notably, the exclusion does not mention sexual assault and rape. And Plaintiff points out that many of the exclusion's terms are defined in Nevada law as pertaining to children. (*See* Pl.'s Mot. Summ. J. 21:5–21). The insured could reasonably believe that sexual assault and rape of an adult would not be covered under the exclusion, but the insurer could also reasonably argue that sexual assault and rape are included under the broadly used terms. Defendants again failed to employ clear language communicating the nature of this exclusion. *See Nat'l Union Fire Ins.*, 682 P.2d at 1382. In light of the exclusion's ambiguity, we must interpret the provision to effectuate the insured's reasonable expectations: that bodily injury resulting from sexual assault is covered under the policy in the same way that bodily injury resulting from another type of battery would be. *See Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011); *see also Granite Mgmt. Corp. v. Aetna Cas. & Sur. Co.*, 37 F. App'x 262, 265 (9th Cir. 2002) ("An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy. . . .").

The Nevada Supreme Court recently established a three-part test to determine whether coverage is properly precluded: "an insurer must (1) draft the exclusion in obvious and unambiguous language, (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion

plainly applies to the particular case before the court." *Powell*, 252 P.3d at 674. Defendants fail to satisfy this test. If they intended to exclude coverage for sexual assault and rape or intended for the exclusion to apply to third parties, they should have drafted a more explicit exclusion. Because Plaintiff has sufficiently demonstrated a potential for coverage under the Policy's duty to defend, the Court GRANTS Plaintiff's Motion for Summary Judgment to the extent she alleges a breach of the duty to defend.[4]

### C. Damages

"In a case where the duty to defend does in fact arise, and the insurer breaches that duty, the insurer is at least liable for the insured's reasonable costs in mounting a defense in the underlying action." *Century Sur. Co. v. Andrew*, 432 P.3d 180, 184 (Nev. 2018). As far as whether the insurer may be liable for an entire judgment that exceeds the policy limits in the underlying action, "damages for a breach of the duty to defend are not automatically limited to the amount of the policy; instead, the damages awarded depend on the facts of each case." *Id.* Thus, "[a] party aggrieved by an insurer's breach of its duty to defend is entitled to recover all damages naturally flowing from the breach." *Id.* These damages include the amount of the judgment against the insured plus interest, costs and attorney fees incurred by the insured, and any additional costs naturally resulting from the breach. *Id.* However, the Nevada Supreme Court was "not saying that an entire judgment is automatically a consequence of an insurer's breach of its duty to defend; rather, the insured is tasked with showing that the breach caused the excess judgment and 'is obligated to take all reasonable means to protect himself and mitigate his damages.'" *Id.* (quoting *Thomas v. W. World Ins. Co.*, 343 So.2d 1298, 1303 (Fla. Dist. Ct. App. 1977)).

---

[4] Plaintiff's Motion for Summary Judgment requests judgment on her entire breach of contract claim, but her breach of contract claim includes breaches not discussed in her Motion, such as the duty to indemnify and act in good faith. (*See* FAC ¶¶ 42–43). Because Plaintiff's Motion for Summary Judgment provides argument on only the breach of the duty to defend, this Order is limited to granting her breach of contract claim as applied to Defendants' breach of the duty to defend.

Plaintiff's Motion for Summary Judgment states that Defendants' breach of the duty to defend resulted in damages in excess of $20,000,000. (Pl.'s Mot. Summ. J. 30:8–9). At a minimum, she requests that Defendants be found liable for payment on the judgments against APG by Powers and Harbor Island. (*Id.* 30:9–11). While the Court is able to determine that Defendants are liable for the insured's reasonable costs, Plaintiff does not provide sufficient evidence allowing the Court to determine exactly how much Defendants are liable for. *See* Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."); *see also Thoresen v. Lumbermens Mut. Casualty Co.*, 351 F.2d 573 (7th Cir. 1965) (affirming grant of partial summary judgment against insurer, which the trial court found liable for legal expenses it should have incurred to defend its insured, although the sum was not initially adjudicated). Because this issue was not fully briefed, and Plaintiff did not provide sufficient evidence, the Court cannot currently determine the proportion of Plaintiff's expenses that Defendant must contribute as a matter of law. This issue remains for trial.

///

///

///

///

///

///

///

///

///

## IV.     <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 24), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 19), is **GRANTED in part**.

**IT IS FURTHER ORDERED** that the parties will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this __26__ day of August, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT